IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
June 16, 2023 04:02 PM
ST-2020-CV-00170
TAMARA CHARLES
CLERK OF THE COURT



BLICATION

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
\*\*\*

| | | |
|---|---|---|
| SHANIKA K. LEWIS, | ) | **CASE NO.: ST-2019-CV-00150** |
| Plaintiff, | ) | |
| v. | ) | **ACTION FOR DAMAGES** |
| | ) | |
| CONAGRA BRANDS, INC. F/K/A AND | ) | **JURY TRIAL DEMANDED** |
| SUCCESSOR IN INTEREST TO | ) | |
| CONAGRA FOODS, | ) | |
| Defendants. | ) | |
| SHANIKA K. LEWIS, | ) | |
| | ) | **CASE NO.: ST-2020-CV-00170** |
| Plaintiff, | ) | |
| v. | ) | **ACTION FOR DAMAGES** |
| | ) | |
| DS CONTAINERS, INC. AND PSMT, LLC | ) | **JURY TRIAL DEMANDED** |
| D/B/A PRICESMART, | ) | |
| | ) | |
| Defendants. | ) | |

Cite as : 2023 VI Super 30

## MEMORANDUM OPINION AND ORDER

¶1 Pending before this Court are:

1. Defendant DS Containers, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed on June 4, 2020;

2. Defendant DS Containers Inc.'s Memorandum in Support of Motion to Dismiss, filed on June 4, 2020;

3. Plaintiff's Opposition to Motion to Dismiss With Alternate Request To Do Jurisdictional Discovery, filed on June 16, 2020[1];

4. Defendant DS Containers Inc.'s Reply Brief in Further Support of Motion to Dismiss, filed on July 1, 2020;

---

[1] Including a motion seeking court action in an opposition confuses the record and requires additional time to separate out distinct issues with separate legal standards. The parties are asked to refrain from this practice.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 2 of 25**

5. Plaintiff's Supplemental Memorandum in Opposition to DS Containers' Motion to Dismiss for Lack of Jurisdiction, filed on February 21, 2023;

6. Defendant DS Containers, Inc.'s Supplemental Brief in Further Support of DS Containers' Motion to Dismiss for Lack of Jurisdiction, filed on March 7, 2023;

7. Plaintiff's Reply to DS Containers' Opposition to Her Supplemental Memorandum in Opposition to DS Containers' Motion to Dismiss for Lack of Jurisdiction, filed March 22, 2023.

¶2 Defendant DS Containers, Inc. ("DSC") moves to dismiss Plaintiff Shanika K. Lewis' ("Lewis") Complaint pursuant to Virgin Islands Rules of Civil Procedure 12(b)(2).

¶3 DSC's Motion to Dismiss for Lack of Personal Jurisdiction will be denied as Lewis' Complaint presents sufficient factual allegations which, taken in a light most favorable to the nonmoving party and accepted as true, provides a prima facie showing that jurisdiction is proper in this forum. In addition, the Court will adopt the stream-of-commerce theory set forth in *World-Wide Volkswagen*[2] as part of the common law of the U.S. Virgin Islands.

## I.   INTRODUCTION.

¶4 This matter arises from an unfortunate kitchen accident in which Lewis was injured when a can of PAM Oil Spray exploded while she was cooking in her home. Lewis alleges that on or about April 2, 2018, a PAM spray can fell from a cabinet above her gas stove, abruptly vented, and released its flammable contents into the open flame of one of the burners causing a fire.[3] The aerosol can at issue was designed and manufactured by DSC and sold to Conagra Brands, Inc. ("Conagra") in Illinois, who then had the can filled with pressurized cooking oil. Conagra subsequently distributed the finished product to Pricesmart in the U.S. Virgin Islands where it was purchased by Lewis.

¶5 Lewis alleges that the can was defective when it was sold by DSC to Conagra. Conagra is a large packaging food company with a nationwide and international market.[4] DSC sells empty aerosol cans to Conagra and then ships the cans to Conagra's designated can filler, Full-Fill Industries LLC, located in Illinois.[5] Eventually, Conagra sells the finished products, packaged in DSC-manufactured aerosol cans, throughout the United States including the U.S. Virgin Islands.[6]

---

[2] *World-Wide Volkswagen*, 444 U.S. 286 (1980).
[3] Compl. 1, 2.
[4] Pl.'s Suppl. Mem. Opp'n DSC's Mot. to Dismiss 6.
[5] Kuehn Aff. ¶ 5.
[6] Compl. ¶ 26.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 3 of 25**

¶6 DSC moves to dismiss Lewis' complaint based on lack of personal jurisdiction. DSC argues that exercising jurisdiction over it would violate its due process rights because DSC does not have requisite minimum contacts with the forum and Lewis cannot demonstrate the requisite connection between DSC, the U.S. Virgin Islands, and the litigation.

¶7 DSC maintains that it has no widespread, systematic, or continuous contacts within the U.S. Virgin Islands and that it has no expectation, nor could it have anticipated to be in a U.S. Virgin Islands court. DSC maintains it does not purposefully seek and has never sought the protection of U.S. Virgin Islands law or a U.S. Virgin Islands court. For all of the foregoing reasons, DSC contends that this Court must dismiss Lewis' complaint for lack of general and specific personal jurisdiction. In support of its Motion, DSC further asserts the following:

- Every step in DSC's manufacturing and shipping process takes place outside this forum in Illinois.[7]

- DSC never made a direct shipment or sale of products to the U.S. Virgin Islands.[8]

- DSC's role is limited to manufacturing empty aerosol cans for Conagra to fill as Conagra chooses and shipping them to Conagra's "designated can filler" where "from there, they presumably are shipped to a retailer for sale."[9] DSC plays no role in selecting where Conagra fills its products, sells its products, or distributes them.[10]

- No contacts exist between DSC and the U.S. Virgin Islands because DSC is a non-resident manufacturer of empty aerosol cans who solely ships its cans to a designated can filler in Illinois after being sold to Conagra — also in Illinois.[11]

- DSC is incorporated in Delaware and its principal place of business is in Illinois.[12]

- DSC is not involved in the marketing or sale of Conagra's production in the U.S. Virgin Islands and no partnership exists between Conagra and DSC. DSC responds to Conagra's business demands by manufacturing and selling empty aerosol cans in Illinois and shipping them to an independent filler, who is also located in Illinois.[13]

---

[7] Kuehn Aff. ¶¶ 4-5.
[8] Def.'s Suppl. Br. Further Supp. Mot. Dismiss 5.
[9] Def.'s Suppl. Br. Further Supp. Mot. Dismiss 5.
[10] Kuehn Aff. ¶ 5.
[11] Kuehn Aff. ¶¶ 4-5.
[12] Kuehn Aff. ¶ 4.
[13] Def.'s Suppl. Br. Further Supp. Mot. Dismiss 4.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*
*Case No. ST-2020-CV-00170*
**Memorandum Opinion and Order**
**Page 4 of 25**

2023 VI Super 30

¶8 In contrast, Lewis contends that DSC engages in a "persistent course of conduct" in which its cans flow into the U.S. Virgin Islands by its association with Conagra, as one of DSC's largest customers,[14] and a distributor of DSC-manufactured cans. Lewis asserts that DSC provides cans for "hundreds of companies" that supply a wide variety of food and household products in the U.S. Virgin Islands through several different stores.[15] Lewis also asserts that DSC indirectly "derives substantial revenue from goods used or consumed" in this territory, including revenues from the sales of Conagra's Pam Spray and other products sold in the U.S. Virgin Islands in cannisters manufactured by DSC. Lewis relies upon the principal jurisdictional theory of stream of commerce. Lewis argues DSC established requisite contacts with the U.S. Virgin Islands as a supplier because, in the course of business, DSC participated in placing the cans containing the PAM product in the stream of commerce.[16]

## II.     EVIDENTIARY BURDEN.

¶9 Once a defendant challenges the court's jurisdiction, the burden then shifts to the plaintiff to show that jurisdiction over the defendant is proper.[17] The evidentiary burden for a showing of personal jurisdiction depends on whether the Court holds a hearing on the motion.[18] Where no evidentiary hearing has been held, the plaintiff need only make a prima facie showing of personal jurisdiction.[19] This means the plaintiff must establish with reasonable particularity sufficient contacts between the defendant and the forum state. In considering a motion to dismiss for lack of personal jurisdiction, the court must accept the opposing party's allegations supported by affidavits or other competent evidence as true "and resolve all factual disputes in the opposing party's favor.[20] If the court holds an evidentiary hearing on personal jurisdiction, the nonmoving party must prove by a preponderance of the evidence that jurisdiction is proper.[21]

¶10 In the instant matter, neither party requested an evidentiary hearing, and none was held. Therefore, Lewis need only present evidence supporting a prima facie showing to defeat DSC's motion to dismiss for personal jurisdiction.

---

[14] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss, Ex. F (Bigos Aff. ¶ 8) (citing 2016 article from *Crain's Chicago Business*).

[15] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss ¶¶ 3-4.

[16] Compl. ¶ 25.

[17] *Molloy v. Independence Blue Cross*, 56 V.I. 155, 172 (V.I. 2012).

[18] *Id.*

[19] *Id.*

[20] *Id.* at 173.

[21] *Id.* at 172.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*                    2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 5 of 25**

## III.   ANALYSIS.

¶11 Establishing personal jurisdiction in the U.S. Virgin Islands involves a two-part analysis.[22] The plaintiff must demonstrate that (1) jurisdiction is appropriate under the U.S. Virgin Islands Long Arm Statute, § 4903 of Title 5 of the U.S. Virgin Islands Code, and (2) jurisdiction comports with the due process clause of the Fourteenth Amendment.

### A.   U.S. Virgin Islands Long Arm Statute

¶12 To evaluate whether personal jurisdiction is proper under the U.S. Virgin Islands Long-Arm Statute, the Court must "determine (1) whether the defendant's contacts meet one of the categories under section 5 V.I. Code Ann. § 4903(a) and (2) whether the plaintiff's claim 'arises from' that contact."[23]

Specific personal jurisdiction may be asserted through the long-arm statute under any of the eight grounds enumerated in the statute, 5 V.I. Code Ann. § 4903.[24] The parties in the instant matter focus their arguments on §4903(a)(4), which provides:

**(a)** A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's. . . .

> **(4)** causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory. . . .

**(b)** When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.[25]

¶13 Section **(a)(4)** has two components. It first requires a prima facie showing that DSC caused tortious injury in the territory by an act or omission outside the territory.[26] Secondly, it requires that Lewis "establish the existence of additional unrelated forum contacts, a plus factor," by providing evidence that DSC has (1) regularly done business with or solicited business from the U.S. Virgin Islands, (2) engaged in any other persistent course of conduct in the territory, or (3) derived substantial revenue from goods or services consumed in the U.S. Virgin Islands.[27] "A

---

[22] *Molloy*, 56 V.I. at 173 (citing *In re Najawicz*, 52 V.I. 311, 336 (2009)).

[23] *Molloy* at 174 (citing *In re Manbodh Abestos Litigation II*, 47 V.I. 267 (Super. 2005)).

[24] *In re Kelvin Manbodh Asbestos Litigation Series*, 47 V.I. 267, 277 (Super. 2005).

[25] 5 V.I.C. § 4903.

[26] *In re Manbodh Asbestos*, 47 V.I. at 281.

[27] *Molloy* at 180.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*            2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 6 of 25**

court may consider each of these factors individually, or all three cumulatively, for the purposes of satisfying this step of the analysis." [28] "The conduct establishing the plus factor does not need to have any relationship with the tortious activity." [29]

¶14 Evaluating whether a claim arises from a contact for purposes of the long-arm statute is a two-step process: first the court determines if the contact — one of the enumerated acts in § 4903(a) — is the "but-for" cause for the claim and then it determines if the substantive obligations and privileges that accompany the contact are closely related to the action. A "but-for" cause is a cause without which the event could not have occurred. [30]

### 1. Jurisdiction over DSC is proper under section 4903(a)(4), causing injury in the U.S. Virgin Islands by act or omission outside the territory.

¶15 The long-arm statue may establish jurisdiction over DSC if, as a foreign corporation, DSC can be shown to have committed a tort outside the U.S. Virgin Islands causing a tortious injury in the U.S. Virgin Islands, while conducting additional unrelated activities within the forum. [31] The tortious injury — the purported injury to Lewis in her home caused by the explosion of the PAM can — was suffered, if at all, in the U.S. Virgin Islands. Lewis alleges that she sustained personal injury as a result of a defective aerosol can manufactured by DSC. There is no dispute that the allegedly defective PAM Spray can that gave rise to the present action was solely manufactured by DSC in Illinois and purchased in the U.S. Virgin Islands. Likewise, DSC does not dispute that Lewis was injured in the U.S. Virgin Islands. DSC, however, argues that Lewis provides no evidence showing DSC caused Lewis' injuries.

¶16 Lewis provides two expert reports opining that the vented PAM Spray Can manufactured solely by DSC was defectively designed and consequently the "but for" cause of the incident giving rise to this lawsuit. [32] DSC contests this evidence, but because no evidentiary hearing was conducted, Lewis' factual allegations must be accepted as true for the limited purpose of determining personal jurisdiction. [33]

---

[28] *Id.* (citing *Hendrickson v. Reg O Co.*, 17 V.I. 457, 463 (D.V.I. 1980)).

[29] *Molloy* at 180.

[30] *Id.* at 174 ("The United States Court of Appeals for the Third Circuit's procedure in determining whether a claim 'arises out of' the defendant's contacts with the forum is to determine whether the contact is the 'but-for' cause of the action, and, if so, to then determine if the contact's substantive obligations and privileges are closely related to the cause of action. The Supreme Court of the Virgin Islands finds this formulation helpful and persuasive to its interpretation of V.I. Code Ann. tit. 5, § 4903(b), and adopts it as the correct standard in determining whether a claim is one 'arising from' one of the enumerated acts in § 4903(a).").

[31] *In re Manbodh Asbestos Litigation II*, 47 V.I. at 280-281.

[32] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss Ex. H.

[33] *Molloy* at 181 (citing *Metcalf v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3rd Cir. 2009)).

*Shanika K. Lewis v. Conagra Brands, Inc.*
Case No. ST-2020-CV-00150
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*           2023 VI Super 30
Case No. ST-2020-CV-00170
Memorandum Opinion and Order
Page 7 of 25

¶17 Construing all factual disputes in a light most favorable to Lewis as the opposing party, and taking all properly supported allegations as true, this Court finds Lewis presents a prima facie showing of conduct by DSC "causing tortious injury in this territory by an act or omission outside this territory."

## 2. Jurisdiction over DSC is proper under section 4903(a)(4) engagement in persistent course of conduct and derivation of substantial revenue.

¶18 Lewis must meet the second part of 4903(a)(4) by showing the existence of additional unrelated forum contacts — "a plus factor" — before the Court may exercise jurisdiction under the Long Arm Statute.[34] This plus factor will be satisfied if Lewis demonstrates that DSC "1) regularly does or solicits business, 2) engages in any other persistent course of conduct, or 3) derives substantial revenue from goods used or consumed or services rendered, in this territory." 5 V.I.C §4903 (a)(4).[35]

¶19 The record shows Conagra, a distributor of Pam Spray Oil, purchased over 200 million vented cans from DSC between 2011 and 2019, which were filled with cooking spray, including Pam Cooking Spray. [36] The record also shows a variety of products in cans manufactured by DSC exclusive of the PAM Spray Oil that are sold in the U.S. Virgin Islands. These cans display markings identifying DSC as the manufacturer. The evidence demonstrates that cans manufactured by DSC have the marking "DOT 2QM5749" as well as a "DSC" marking.[37] Additional evidence provided suggests that DSC supplies "hundreds of companies" with cans marked "DOT 2QM5749" to use for marketing their products. Lewis provided photos (marked as Exhibit 2) showing 19 different products in cans with the "DSC" and the "DOT2Q M5749" markings that were purchased at several stores in the U.S. Virgin Islands alone, including Home Depot, Plaza West and Gallows Bay Hardware.[38] The cans in the photos represent a variety of food and household items that are also sold throughout the United States.[39]

¶20 Lewis provides additional evidence demonstrating that DSC and its related companies maintain websites and social media accounts advertising their affiliation with Conagra, "noting DSC manufactures cans used by Conagra for its products, including Pam Spray." [40] One post touts Conagra received the American Package Design Award in 2015 using DSC.[41] Another proclaims that DSC was named Conagra's 'Supplier of the Year' in 2017." [42] Additional evidence provided

---

[34] *Molloy* at 180 (citing *In re Manbodh* at 281).

[35] *Id.* (quoting *Hendrickson v. Reg O Co.*, 17 V.I. 457, 463 (D.V.I. 1980)).

[36] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss Ex. E (Tabor Dep. 18:5-18).

[37] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss 2.

[38] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss Ex. D.

[39] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss Ex. D.

[40] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss 4; *see also* Ex. F, at 6; Bigos Aff. ¶9.

[41] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss 4; *see also* Ex. F, at 7; Bigos Aff. ¶9.

[42] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss 4; *see also* Ex. F, at 9; Bigos Aff. ¶9.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
Case No. ST-2020-CV-00170
**Memorandum Opinion and Order**
**Page 8 of 25**

shows Conagra's 10-K form filed with the SEC in 2012 describing Conagra as "one of North America's leading food companies" and declaring that its products can be found in "97% of America's households." [43] Further evidence includes a report claiming Conagra is DSC's largest customer.[44] DSC does not refute this evidence.

¶21 The record demonstrates that cans manufactured by DSC have been distributed to the U.S. Virgin Islands for a significant number of years through its association with Conagra. Although DSC maintains its business dealings with Conagra are limited to shipping cans to Conagra's 'designated filler,' and that it could not have anticipated that cans holding its products would be sold in the U.S. Virgin Islands, the facts show DSC was aware its cans were used in at least several consumer products that are purchased by consumers and businesses throughout the United States, including in the U.S. Virgin Islands. DSC does not dispute this. DSC argues that it cannot be subject to jurisdiction in the U.S. Virgin Islands because its contacts with this jurisdiction are through a third party. Although DSC's contacts were through Conagra, it is not automatically immune from prosecution in this jurisdiction. [45]

¶22 All of these facts, taken together as true, are sufficient to establish a prima facie showing that DSC engaged in a persistent course of conduct for the purposes of section 4903(a)4. Likewise, this Court finds the evidence convincing of a prima facie showing that DSC's persistent course of conduct in its relationship with Conagra in the U.S. Virgin Islands over a significant number of years creates substantial revenues for DSC from goods used or consumed within the U.S. Virgin Islands, including from the sale of Conagra's Pam Oil Spray.[46]

---

[43] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss 4; *see also* Ex. F, Bigos Aff. ¶5.

[44] Pl.'s Suppl. Mem. Opp'n DSC's Mot. Dismiss 4; *see also* Ex. F, Bigos Aff. ¶8 (citing 2016 article from *Crain's Chicago Business*).

[45] *See*, e.g., *Chabuz v. Putnam Lumber & Exp. Co.*, 2016 V.I. LEXIS 33, *18-19 ("Although [Defendant's] contacts were through third party distributors, it is not automatically immune from prosecution in this jurisdiction."); *Hill v. Whitecap Investment Corp. d/b/a Paradise Lumber*, No. ST-12-CV-395, 2013 V.I. LEXIS 41, *10, [WL], at *4 (Super. 2013) (holding personal jurisdiction is properly asserted by the Court even though Defendant's contact with the forum at issue were made through a third party); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 280 (3d Or. 1994) ("[u]nderlying the assumption of jurisdiction in these cases is the belief that the fairness requirements of due process do not extend so far as to permit a manufacturer to insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products") (quoting *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir. 1981); *Samad v. High Soc. Magazine*, 20 V.I. 554, 556 (D.V.I. 1984) ("Defendant does not insulate itself from liability in this jurisdiction merely by passing its publication through an independent distributor. High Society places its publication into the stream of commerce with the knowledge that a certain, not insignificant, number of copies will be sold within the jurisdiction. It thus engages in a 'persistent course of conduct' within the meaning of 5 V.I.C. § 4903(a)(4)").

[46] DSC asserts Lewis does not provide a specific amount of revenue derived by DSC, but the evidence shows that ConAgra purchased over 200 million cans from DSC since 2011, a portion of which were destined for the U.S. Virgin Islands. *See Chapin v. Whitecap Inv. Corp.*, 2015 V.I. LEXIS 127, *9 ("Because this is a jurisdiction with a small population more than 1,000 miles away from any continent... 'substantial' must be interpreted by local Virgin Islands standards. Accordingly, whether the revenue is substantial' does not depend upon a comparison with the defendant's total sales.... Instead, the substantiality of the revenues must be measured by objective factors.") (citations omitted.);

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*                    2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 9 of 25**

¶23 The second long arm factor looks to the connection between Lewis' claim and DSC's contacts with the U.S. Virgin Islands. Lewis' claim unquestioningly arises out of DSC's contacts with the forum. She alleges that DSC sold a defective aerosol can product to Conagra, which then sold the can to Pricesmart, a retailer in St. Thomas, and that the defective can injured her. It is the alleged "but for" cause of her injury. Construing all factual disputes in a light most favorable to Lewis as the opposing party, and taking all properly supported allegations as true, Lewis has made a prima facie showing that supports exercising personal jurisdiction under the U.S. Virgin Islands Long Arm Statute.

¶24 Even if the Long Arm Statute is satisfied, the Court's exercise of jurisdiction over a party must be in accord with due process.[47] DSC cites to *Coates v. Ford Motor Co.* stating that "the [U.S.] Virgin Islands' test for whether a claim 'arises out of' the defendant's contacts with the forum is coextensive with the Third Circuit's test under the constitutional jurisdiction doctrine of specific jurisdiction."[48] Nevertheless, finding jurisdiction proper under the U.S. Virgin Islands Long Arm Statute, 5 V.I.C. § 4903, this Court must determine whether exercising jurisdiction over DSC comports with the United States Constitution's Due Process Clause under a separate inquiry conducting a *Banks* analysis of the stream-of-commerce theory.[49]

---

*See, e.g., Molloy* 56 V.I. at 181 (finding $40,000-$100,000 in licensing fees per year satisfy §4903(a)(4)'s 'substantial revenue" requirement); *See, also Hendrickson v. Reg. O. Co.*, 17 V.I. 457, 463-64 (D.V.I. 1980), *aff'd* 657 F.2d 9, 12-13 (3d Cir. 1981) (finding annual sales of $1,800 in the Virgin Islands satisfies "substantial revenue" as part of a regular course of dealing); *Chabuz v. Putnam Lumber & Exp. Co.*, 2016 V.I. LEXIS 33, *10-11 (finding defendant's "assertion that it did not control the destination of its products and did not specifically intend for the products to be sold in the Virgin Islands irrelevant to [the] long arm statute, which requires only that the defendant 'derives substantial revenue from goods used or consumed or services rendered in [the U.S. Virgin Islands]; "The statute's terms are objective; there is no subjective knowledge requirement. . . . [R]evenue generation from products sold into this jurisdiction is enough to satisfy the 'substantial revenue' portion of § 4903(a)(4).").

[47] *Molloy* at 181; *Hills v. Whitecap Inv. Corp.*, 2013 V.I. LEXIS 41, *6 (Super. Ct. 2013).

[48] *Coates v. Ford Motor Co.*, No. 3:18-CV-0035, 2020 WL 2499050 (D.V.I. 2020), *vacated,* No. 20-11509, 2021 WL 2207367 (E.D. Mich. June 1, 2021).

[49] In *Banks v. Int'l Rental & Leasing Corporation*, the Supreme Court of the U.S. Virgin Islands explained that U.S. Virgin Islands courts should perform a three-part *"Banks* analysis" to determine what common law rule should apply in the U.S. Virgin Islands instead of "automatically and mechanically" following the Restatements of the American Law Institute or the common law of other jurisdictions. The first step in the analysis is to consider whether any Virgin Islands courts have previously adopted a particular rule; the second step is "determining the position taken by a majority of courts from other jurisdictions; and the third step is identifying the best rule for the Virgin Islands. "The second step – determining the position taken by a majority of courts from other jurisdictions – directs the Superior Court to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular question. . . .Finally, the third step in the *Banks* analysis – identifying the best rule for the Virgin Islands – mandates that the Superior Court weigh all persuasive authority both within and outside the Virgin Islands and determine the appropriate common law rule based on the unique characteristics and needs of the Virgin Islands." *Gov't of the Virgin Islands v. Connor*, 60 V.I. 597, 603, 2014 V.I. Supreme LEXIS 17, *8-9, 2014 WL 702639 (citations omitted.); *Banks v. Int'l Rental & Leasing Corporation,* 55 V.I. 967, 981 (2011).

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 10 of 25**

### B. Due Process.

¶25 Due Process requires that, as a prerequisite for the exercise of personal jurisdiction, the defendant must purposefully establish minimum contacts with the forum.[50] In *International Shoe*, the U.S. Supreme Court recognized two categories of personal jurisdiction: specific jurisdiction and general jurisdiction.[51] Specific personal jurisdiction is based on "activities in a state," while general jurisdiction is based on "presence in the state." [52] "General jurisdiction exists when the defendant has contacts with the forum unrelated to the pending action."[53]

¶26 The test for general jurisdiction under *Daimler v. Bauman* is whether a defendant is "essentially at home." [54] For a defendant corporation, this generally arises only when its corporate headquarters or principal place of business is located in the forum where its affiliation with the state is so "continuous and systematic as to render [it] essentially at home. . . . " [55]

¶27 DSC is incorporated in Delaware and its principal place of business is in Illinois.[56] Matthew Kuehn, Vice President of Sales, Marketing and Technical Support for DSC, executed an affidavit stating that DSC 1) does not have any customers or suppliers located in the U.S. Virgin islands; 2) does not and has not engaged in business in the U.S. Virgin Islands; 3) is not qualified, licensed or authorized to do business in the U.S. Virgin Islands; 4) is not required to and has never maintained a registered agent for service of process in the U.S. Virgin Islands; 5) does not own, control, lease, possess or maintain any real property, office, plant, warehouse, equipment, inventory, books, bank account, records, place of business, agency, or representative in the U.S. Virgin Islands, and 6) does not have any employees, management personnel, officers, directors or other representatives that reside or are located in the U.S. Virgin Islands.[57]

¶28 Lewis concedes DSC lacks the continuous and systematic contacts with the U.S. Virgin Islands required for general jurisdiction. Therefore, in the instant action we only address whether this court may exercise specific personal jurisdiction.

---

[50] *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 108-109 (1987) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

[51] *International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

[52] *Int'l Shoe,* 326 U.S. at 317-18.

[53] *Chapin v. Whitecap Inv. Corp.,* 2015 V.I. LEXIS 127, *10 (citing *Walden v. Fiore,* 571 U.S. 277, 282 (2014).

[54] *Daimler v. Bauman,* 571 U.S. 117, 122 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 119 (2011)).

[55] *Daimler v. Bauman,* 571 U.S. at 119 (2014) (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown, 564 U.S. 915, 919 (2011)*).

[56] Kuehn Aff.

[57] Kuehn Aff.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*      2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 11 of 25**

## 1. Specific Personal Jurisdiction in Stream-of-Commerce Cases.

¶29 Specific personal jurisdiction exists on a claim-by-claim basis[58] and depends on an affiliation between the forum and the underlying controversy.[59] In determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, DSC has "certain minimum contacts" with the U.S. Virgin Islands such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[60]

### a. Minimum Contacts: Purposeful Availment.

¶30 In *Hanson v. Denckla*, the United States Supreme Court identified an essential component of the minimum contact analysis: purposeful availment.[61] In denying specific jurisdiction over an out-of-state defendant, the Court held that the minimum contacts with the forum state cannot be "unilateral" on the part of the plaintiff; rather, the defendant must reach out to the forum in some way.[62] "Purposeful availment" may arise when a manufacturer introduces goods into the "stream of commerce" — a phrase introduced by the U.S. Supreme Court in *World-Wide Volkswagen*.[63] In that case, non-resident plaintiffs purchased an Audi vehicle from a dealership in New York and were driving cross country to Arizona when they were in a car accident while driving through Oklahoma. Their vehicle happened to find its way into the forum state — Oklahoma — solely by the actions of the plaintiffs, rather than by the distributor and the retailer actively reaching out and "avail[ing] themselves of [any] of the privileges and benefits of Oklahoma law."[64] Consequently, the Court reversed the exercise of jurisdiction by the Oklahoma courts over the distributor and the retailer. The Court, however, held that while a plaintiff's unilateral act of "bringing the defendant's product into the forum," alone, may not satisfy

---

[58] *Molloy*, 56 V.I. at 181.

[59] *Chapin v. Whitecap Inv. Corp.*, 2015 V.I. LEXIS 127, *10 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[60] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-317, (3d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[61] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. 310, 319) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

[62] *Id.*

[63] In *World-Wide Volkswagen*, the plaintiff's car was rear-ended causing a fire which resulted in severe injuries. The plaintiff brought a product liability suit in Oklahoma, joining the manufacturer, its importer, the regional distributor, and the retailer, claiming a defective design and placement of the Audi's gas tank. The appeal concerned only the regional distributor and the retailer, which specially appeared in the underlying action to contest personal jurisdiction. The regional distributor was incorporated in New York and had its business office in New York, but it also distributed cars, parts, and accessories to retailers in New York, New Jersey, and Connecticut. The retailer was incorporated in New York and had its principal place of business there. *World-Wide Volkswagen*, 444 U.S. at 288-89 (1980).

[64] *Id.* at 295.

*Shanika K. Lewis v. Conagra Brands, Inc.*
Case No. ST-2020-CV-00150
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*    2023 VI Super 30
Case No. ST-2020-CV-00170
Memorandum Opinion and Order
Page 12 of 25

purposeful availment, a defendant's act in "delivering its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum," may be sufficient.[65] The difference is that the defendant is charged with the knowledge and intent of purposeful contacts under the stream-of-commerce theory due to the foreseeability that the product would arrive in the territory. [66]

### b. Foreseeability.

¶31 In addition to purposeful availment, the principle of minimum contacts also requires that it be foreseeable that the defendant will be hauled into court in the forum state due to its activities within the state. For example, in *Keeton v. Hustler Magazine*, the United States Supreme Court held that a magazine publisher, which had "continuously and deliberately exploit[ed] the New Hampshire market, [] must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." [67] The Court focused on the foreseeability of the potential harm and explained that such an outcome was proper because "[t]here is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." [68]

¶32 In the case of *World-Wide Volkswagen*, neither the distributor nor the retailer of the auto at issue carried on any activity in Oklahoma.[69] They did not close any sales, perform any services, or solicit any business in Oklahoma.[70] While the plaintiffs argued that vehicles are mobile by their very design and purpose and, therefore, it was foreseeable that the vehicle could end up in Oklahoma, the Court dismissed this argument, reasoning "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."[71] An isolated occurrence, or a single sale of a product will not be sufficient. [72]

¶33 DSC argues that it did not purposefully direct any activities at the U.S. Virgin Islands because it ships cans to Conagra's designated can filler who is also located in Illinois. DSC maintains that it merely manufactures empty aerosol cans for Conagra and plays no role in

---

[65] *Id* at 297-98.

[66] *Id.*

[67] *Griffin v. Ste. Michelle Wine Estates Ltd.*, 169 Idaho 57, 67, 491 P.3d 619, 629 (2021) (citing *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 (1984)).

[68] *Id.*

[69] *World-Wide Volkswagen*, 444 U.S. 286 (1980).

[70] *Id.* at 295.

[71] *Id.* at 297.

[72] *J. McIntyre Machinery, Ltd. v. Nicastro* 564 U.S. 873, 888-89 (Breyer, J. concurring). This theory was affirmed in Justice Brennan's concurring opinion in *Asahi*: "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. *Asahi*, 480 U.S. at 117 (Brennan, J. concurring).

*Shanika K. Lewis v. Conagra Brands, Inc.*
Case No. ST-2020-CV-00150
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*                    2023 VI Super 30
Case No. ST-2020-CV-00170
**Memorandum Opinion and Order**
**Page 13 of 25**

selecting where Conagra fills its products, sells its products, or distributes them.[73] Furthermore, Kuehn's affidavit states that DSC does not purposefully seek, and has never purposefully sought, the protection of U.S. Virgin Islands law or a U.S. Virgin Islands court and has no expectation, nor could it have reasonably anticipated, that it would be haled into a U.S. Virgin Islands court for any action based on any facts alleged in Lewis' Complaint. Lewis counters that DSC purposefully directed its activities towards the U.S. Virgin Islands by delivering its products into the "stream of commerce."

### c. Stream-of-Commerce Theory.

¶34 Stream of commerce "refers to the movement of goods from manufacturers through distributors to consumers."[74] In *World-Wide Volkswagen*, the United States Supreme Court tackled the question of minimum contacts and purposeful availment where a company manufactures a product in one state — Illinois, for example — and sells the product to another party placing the product into "the stream of commerce." The product then continues further down "the stream" ending up in another state — or territory, like the U.S. Virgin Islands — and causes an injury there. [75]

¶35 On appeal, the Court held that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[76] This has become known as the "stream of commerce" test.[77]

¶36 "The Court reasoned: When a corporation purposefully avails itself of the privilege of conducting activities within the forum State, it has clear notice that it is subject to suit there and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, *but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product* in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or others."[78]

---

[73] Kuehn Aff.

[74] *J. McIntyre*, 564 U.S. at 874.

[75] *World-Wide Volkswagen*, 444 U.S. at 287, 289, 297 (1980) (finding an Oklahoma court may not exercise personal jurisdiction "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma").

[76] *Id.* at 297-98.

[77] *Id.*

[78] *Griffin v. Ste. Michelle Wine Estates Ltd.*, 169 Idaho 57, 68, 491 P.3d 619, 630 (citing *World-Wide Volkswagen* at 297-98) (emphasis added, internal quotations and citations omitted.).

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 14 of 25**

¶37 *World-Wide Volkswagen* became a landmark decision because the Court's majority delineated what we now call the "stream-of-commerce" theory of jurisdiction, which provides a basis for courts to assert personal jurisdiction over out-of-state manufacturers consistent with the Due Process Clause.[79] "The stream-of-commerce theory contends, essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant "has injected its goods into the forum state indirectly via the so-called stream of commerce," rendering it foreseeable that one of its goods could cause injury in the forum state.[80]

### d. Challenges to Stream of Commerce.

¶38 DSC relies on *Shuker v. Smith*, to assert that "deliberate targeting" is required to establish minimum contacts, that the Third Circuit declined to adopt the stream-of-commerce theory, and that "a plurality of Supreme Court Justices has twice rejected" the theory.[81]

¶39 Since its Stream of Commerce decision in *World-Wide Volkswagen*, the U.S. Supreme Court has twice revisited the issue – in *Asahi*[82] and *J. Mcintyre*.[83] However, the *Asahi* Court was split 4-4, which resulted in two divergent stream of commerce tests: the Justice Brennan "stream-of-commerce" test and the Justice O'Connor "stream-of-commerce *plus*" test.[84] The *Asahi* four-justice plurality noted the *two* approaches that courts have taken in applying *World-Wide Volkswagen*: (1) the stream of commerce test which allows an exercise of personal jurisdiction to be based on no more than the defendant's act of placing the product in the stream of commerce with awareness that its product would be sold in the state; and (2) the stream of commerce plus test which requires the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce. Neither Justice Brennan nor Justice O'Connor could muster a majority on the question of whether mere awareness that a product will be sold in the forum state suffices to support jurisdiction under the stream-of-commerce doctrine.[85]

¶40 According to four of the justices on the *Asahi* court, placing a product in a distribution chain that ultimately sends the product to the forum state, intentional or otherwise, establishes personal jurisdiction in the forum. That's it. This is the Brennan stream-of-commerce test.

---

[79] *Griffin* at 69 (citing *World-Wide Volkswagen* at 297).

[80] *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009).

[81] *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018).

[82] *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102 (1987).

[83] *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 874 (2011).

[84] *Asahi*, 480 U.S. 102 (1987). *Asahi* dealt with a motorcycle accident in California that injured a California resident. The resident sued the non-US component part manufacturer for products liability. The manufacturer did no marketing in the U.S.

[85] *Id.*

*Shanika K. Lewis v. Conagra Brands, Inc.*
Case No. ST-2020-CV-00150
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*                                    2023 VI Super 30
Case No. ST-2020-CV-00170
**Memorandum Opinion and Order**
**Page 15 of 25**

As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.[86]

¶41 Justice Brennan went on to state that "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale."[87]

¶42 On the other hand, Justice O'Connor's test not only requires that the defendant place the product into the stream of commerce, but the defendant must also take some action that demonstrates its intent or purpose to enter the market in the forum state. [88] Justice O'Connor's opinion in *Asahi* attempted to transform the United States Supreme Court's jurisdictional jurisprudence from the *World-Wide Volkswagen* "stream of commerce" test into a more stringent "stream of commerce *plus*" test.[89] Justice O'Connor's opinion, as noted, was a plurality, i.e., it did not garner enough votes to constitute a majority of the Court. [90] Justice Brennan — joined by three other Justices — concurred only with the plurality on the "fairness" factors and in the judgment of the Court; otherwise, Justice Brennan depended on the framework of *World-Wide Volkswagen*.[91] Under Justice Brennan's view, so long as there is a regular flow of the product into the forum, then the defendant should reasonably anticipate being hauled into court there, and the Constitution permits bringing suit against the manufacturer in that forum.[92]

---

[86] Asahi, 480 U.S. at 117 (Brennan, J. concurring in part and concurring in the judgment).

[87] *Id.* (Brennan, J., concurring in part and concurring in the judgement); *See Griffin v. Ste. Michelle Wine Estates Ltd.*, 169 Idaho 57, 60, 491 P.3d 619, 622 (2021).

[88] Justice O'Connor provided examples of acts that "may indicate" an intent to serve the forum market, such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112.

[89] It should be pointed out that the phrase "stream of commerce plus test" does not appear in *Asahi*.

[90] O'Connor and three other justices opined that the defendant's purpose or intent – not merely the defendant's awareness – that the product would end up in the forum state or an action by another participant in the distribution chain, was important. *Asahi*, 480 U.S. at 112.

[91] *Asahi*, 480 U.S. at 120-21.

[92] *Id.* at 109, 119.

*Shanika K. Lewis v. Conagra Brands, Inc.*
Case No. ST-2020-CV-00150
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
Case No. ST-2020-CV-00170
Memorandum Opinion and Order
Page 16 of 25

¶43 To date, "no decision of the Supreme Court of the [U.S.] Virgin Islands or of the United States Court of Appeals for the Third Circuit has conclusively adopted either Brennan's or O'Connor's position with respect to the stream of commerce theory." [93]

¶44 The U.S. Supreme Court addressed the stream of commerce issue for a second time in *J. McIntyre v. Nicastro*, but once again, not of the three opinions delivered in that case had a majority of the justices in support of it.[94] "In any event, the Supreme Court of the United States remains divided, and *McIntyre* did not change the law with respect to the stream of commerce theory."[95] The plurality decisions in *Asahi* and *McIntyre* left courts to essentially decide for themselves whether *Ashai* was applicable at all and, if it was, which *Ashai* stream-of-commerce test to use.

¶45 In looking to other jurisdictions as required for a *Banks* analysis,[96] the issue continues to divide the circuits.[97] "Stream of commerce *plus*" jurisdictions include the Fourth and Sixth Circuits, as well as the state of Texas. These jurisdictions opine that a defendant must create "a substantial connection to the forum state by action purposefully directed toward the forum state

---

[93] *Bertrand v. Cordiner Enters.*, 2012 V.I. LEXIS 164, *6-8; *see also D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 105 (3d Cir. 2009) ("The two plurality opinions in *Asahi*, Justice O'Connor's and Justice Brennan's, produced two distinct frameworks for the minimum contacts analysis as it relates to stream-of-commerce theory, and we have not had occasion to choose between the O'Connor and Brennan positions."); *Whitecap Inv. Corp. v. Putnam Lumber & Exp. Co.*, 2013 U.S. Dist. LEXIS 39413, *29 ("Precisely what is required to give rise to personal jurisdiction under the so-called "stream-of-commerce" theory is not entirely clear."); *Stewart v. Whitecap Inv. Corp.*, 2013 U.S. Dist. LEXIS 39410, *23, 2013 WL 1163510 (citing *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 205 (3d Cir. 1998)) ("The Court of Appeals for the Third Circuit has not selected either of the two tests articulated in *Asahi Metal* as the preferred means of determining whether a defendant has made the minimum contacts necessary to support the exercise of personal jurisdiction. Instead, it encourages courts to consider both tests and then render a decision "based on the facts in the record."); *Sieg v. Sears Roebuck & Co.*, 855 F. Supp. 2d 320, 326, 327 (M.D. Pa. 2012) ("we have not had occasion to choose between the O'Connor and Brennan positions"); *but see, e.g., Chapin v. Whitecap Inv. Corp.*, 2015 V.I. LEXIS 127, *17 ("The Virgin Islands District Court and Superior Court have applied the above principles to litigation involving almost identical claims and parties to those now before the Court. Following the Third Circuit Court of Appeals, the District Court and Superior Court have applied Justice Brennan's test *and* Justice O'Connor's test. In each case, the courts found at least one instance of the "additional conduct" Justice O'Connor requires, and therefore found jurisdiction to be proper"); *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 207, (3d Cir. 1998) ("[S]ince we have not manifested a preference for either of the two standards, the demands of clarity counsel us to apply both standards explicitly. ").

[94] *J. Mcintyre*, 564 U.S. 873 (2011).

[95] *Bertrand v. Cordiner Enters.*, 2012 V.I. LEXIS 164, *6-8.

[96] The second step of a *Banks* analysis — determining the position taken by a majority of courts from other jurisdictions — directs the Superior Court to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular question. *Banks v. Int'l Rental & Leasing Corporation*, 55 V.I. 967, 981 (2011).

[97] *See J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) ("Since *World-Wide Volkswagen*, the viability of the stream of commerce theory has been uncertain; circuit courts have split on the issue and the Supreme Court has twice failed to resolve it conclusively.") (citations omitted.).

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*     2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 17 of 25**

or otherwise invoking the benefits and protections of the laws of the state" in order to be hauled into court in that forum.[98]

¶46 Alternatively, "stream of commerce" jurisdictions such as the Fifth, Seventh and Eighth Circuits (and several states) focus their analysis on whether the manufacturer reasonably expected — at the time it placed its product into the stream of commerce — that the part would make it into the forum state. [99] From a policy perspective, advocates of this approach rely on the concept that a defendant who placed goods into the stream of commerce benefits from the retail sale of a final product in the forum state.[100]

### e. *Banks* Analysis.

¶47 As stated earlier, no U.S. Virgin Islands court has previously adopted a particular rule concerning the stream-of-commerce theory after *Asahi*. Neither has the Third Circuit. In light of minimal conformity among jurisdictions since *Asahi*, this Court performs its *Banks* analysis to

[98] *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 479–80 (6th Cir. 2003) ("we make clear today our preference for Justice O'Connor's stream of commerce 'plus' approach"); *Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, 508 S.W.3d 569, 577 (Tex. App. 2016) (noting Texas courts apply "stream of commerce plus" approach); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994) ("To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism."); *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997) (citing to *Lesnick v. Hollingsworth & Vose Co.*).

[99] The Eighth Circuit noted that five Justices in *Asahi* agreed that a continuous and significant placement of products into the stream of commerce, with knowledge that the products will be distributed into the forum state, establishes minimum contacts sufficient to satisfy due process. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612-15 (8th Cir.) (noting the Court is "loath" to count votes from a decision in which the Supreme Court was divided); *see also J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020) ("In the absence of intervening guidance from the Supreme Court, we have reasoned that the Court adopted the stream of commerce theory in *World-Wide Volkswagen* and has not overruled it since."); *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) ("In cases involving a product sold or manufactured by a foreign defendant, this Circuit has consistently followed a 'stream-of-commerce' approach to personal jurisdiction."); *Clune v. Alimak AB*, 233 F.3d 538, 542-545 (8th Cir. 2000) (holding personal jurisdiction proper where foreign manufacturer delivered products into stream of commerce with knowledge they would enter forum); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946-47 (7th Cir. 1992) ("Because the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider that theory to be determinative."); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 & n.2 (7th Cir. 2004) (citing to *Dehmlow* and acknowledging that *Asahi* left the issue unresolved by the Supreme Court, "On that basis, we have found personal jurisdiction in a products liability suit because a defendant sold fireworks to a middleman 'with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce.'").

[100] "A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State or engages in additional conduct directed toward that State. Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause and have not required a showing of additional conduct." *Asahi*, 480 U.S. at 117 (Brennan, J. concurring).

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
Case No. ST-2020-CV-00170
**Memorandum Opinion and Order**
**Page 18 of 25**

determine the contours of U.S. Virgin Islands' stream-of-commerce jurisprudence for the purposes of establishing specific jurisdiction. Based upon the foregoing survey of jurisdictions, and the split within the U.S. Supreme Court, this Court concludes the soundest rule for the U.S. Virgin Islands is the adoption of the U.S. Supreme Court's majority opinion in *World-Wide Volkswagen*, the reasoning in Justice Brennan's concurrence in *Asahi*, and the reasoning in Justice Breyer's concurrence in *J. McIntyre*. Justice Brennan's opinion in *Asahi* essentially relied on the framework of *World-Wide Volkswagen*,[101] and like Justice Breyer's concurrence in *J. McIntyre*, his opinion was based on the narrowest grounds. The "stream of commerce *plus*" test has never had the assent of the majority of the United States Supreme Court. Accordingly, *World-Wide Volkswagen* remains the precedential and controlling opinion when it comes to stream-of-commerce cases.[102]

¶48 From a policy standpoint, this approach serves the U.S. Virgin Islands best by taking into consideration the relative size of the Virgin Islands economy, the safety of its residents when a majority of goods are imported, and the potential imbalance of burdens. Traveling off island in order to confront a defendant who benefits from the retail sale of a final product in the U.S. Virgin Islands can be an unfair burden. The Court in *World-Wide Volkswagen* took great care to distinguish "between a case involving goods which reach a distant State through a chain of distribution and a case involving goods which reach the same State because a consumer . . . took them there." [103]

¶49 *World-Wide Volkswagen* clarifies that the requisite minimum contacts may be established by showing that the defendant placed goods into the stream of commerce with the expectation that the goods will be purchased in the forum state. Both Justice Brennan's concurrence in *Asahi* and Justice Breyer's concurrence in *J. McIntyre* followed and did not alter this approach. For all of the foregoing reasons, in "stream of commerce" cases, *World-Wide Volkswagen* and its "stream of commerce" test is the soundest rule for the U.S. Virgin Islands to adopt when determining whether a non-resident defendant has sufficient minimum contacts with the Virgin Islands for purposes of personal jurisdiction.

## 2. Personal jurisdiction Over DSC is proper under Due Process.

¶50 This Court finds that DSC has "the requisite minimum contacts through purposeful availment with the U.S. Virgin Islands" and Lewis' claim arises from those contacts under the stream-of-commerce theory. As manufacturer of the allegedly defective PAM Spray Can that allegedly injured Lewis, DSC placed its product in a distribution chain in Illinois that ultimately

---

[101] *Id.* at 120-21.

[102] *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'") (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15 (1976) (opinion of Justices Stewart, Powell, and Stevens); *See also Griffin v. Ste. Michelle Wine Estates Ltd.*, 169 Idaho 57, 72-73, 491 P.3d 619, 634-635 (2021).

[103] *Asahi*, 480 U.S. at 120 (Brennan, J. concurring in part and concurring in the judgment); *World-Wide Volkswagen*, 444 U.S. at 306.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 19 of 25**

— intentionally or not — sent the can at issue to the U.S. Virgin Islands, establishing personal jurisdiction in the U.S. Virgin Islands. DSC benefits economically from the retail sales of the final product in the U.S. Virgin Islands and DSC indirectly benefits from U.S. Virgin Islands laws.[104] These benefits accrued regardless of whether DSC directly conducted business in the U.S. Virgin Islands or engaged in additional conduct directed toward the Territory.[105]

¶51 DSC relies on *Shuker v. Smith & Nephew*, a Third Circuit case which —without sufficient elaboration — declined to consider the stream-of-commerce theory based on *Asahi* and *J. McIntyre*.[106] As addressed above, neither the Third Circuit nor the U.S. Virgin Islands Supreme Court adopted either test from *Asahi*, and *World-Wide Volkswagen's* stream of commerce doctrine remains the controlling precedent in many jurisdictions. Likewise, *Shuker* references *D'Jamoos v. Pilatus Aircraft Ltd.*, another Third Circuit case, to justify rejection of the stream-of-commerce theory.[107] This is also problematic because *D'Jamoos* did not evaluate jurisdiction under the stream-of-commerce theory since the product at issue – an aircraft – did not enter the forum through a "stream of commerce" as that term is generally understood — i.e. "the regular and anticipated flow of products from manufacture to distribution to retail sale."[108] Rather, *D'Jamoos* dealt with a single secondhand sale such that the court was reluctant to apply the stream-of commerce-theory. The *D'Jamoos* scenario is distinguishable from the instant matter where DSC meets the "stream of commerce" definition as that term is generally understood — "a regular and anticipated flow of [aerosol cans] from manufacture [in Illinois] to distribution to retail sale" in the U.S. Virgin Islands.[109] What *D'Jamoos* does do in a footnote, however, is confirms that no bright line rule concerning the stream-of-commerce theory had been adopted in the Third Circuit after *Asahi*.[110]

---

[104] *See Asahi* at 117 (Brennan, J. concurring in part and concurring in the judgment).

[105] *Id.*

[106] *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) ("We thus have no cause to revisit our Court's precedent on this issue, and we decline to adopt the Shukers' stream-of-commerce theory of specific personal jurisdiction.").

[107] In *D'Jamoos*, a PC-12 turboprop aircraft that the defendant had manufactured in Switzerland crashed while attempting to land in State College, Pennsylvania. The manufacturer, a Swiss company, built and sold the aircraft in Europe, and the aircraft was brought to the United States through a series of private third-party resales. The manufacturer made all of its U.S. sales through a Colorado-based subsidiary. The court of appeals held that specific jurisdiction did not exist because the crash in Pennsylvania could not be linked to the manufacturer's deliberate activities aimed at Pennsylvania. The stream-of-commerce theory did not provide a basis for jurisdiction because the aircraft did not enter Pennsylvania through a regular distribution channel. "It is undisputed . . . that the aircraft involved in this case did not follow the foregoing regular and anticipated path to Pennsylvania. Rather, Pilatus sold the aircraft to a French buyer who resold it to a Swiss company (not Pilatus) that, in turn, resold it to a Massachusetts company that brought it to the United States and sold it to the Rhode Island company, its owner at the time of the accident." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 97-98 (3d Cir. 2009) (citations omitted.).

[108] *Id.* at 101 ("[I]t is absolutely fatal to appellants' stream-of-commerce argument that the subject aircraft did not actually enter Pennsylvania through a "stream of commerce" as that term is generally understood. . . .").

[109] *Asahi*, 480 U.S. at 117 (Brennan, J. concurring in part and concurring in the judgment).

[110] "A majority of the Court, however, could not agree on the contours of what constitutes 'purposeful availment' in the stream-of-commerce context, and thus its fragmentation did not allow the adoption of bright-line rules. The two

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*                    2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 20 of 25**

¶52 The instant case is similar to *Griffin v. Ste. Michelle Wine Estates, Ltd.*, a recent Idaho Supreme Court case where the plaintiff was injured by an allegedly defective wine bottle and brought suit against the foreign manufacturer of the bottle.[111] In *Griffin*, a bottle of Italian wine, purchased in Idaho, broke in the plaintiff's hands as she attempted to open it. In order to satisfy personal jurisdiction, the plaintiff alleged that the bottle maker and the company that purchased the bottle placed the bottle within the stream of commerce and knew or should have known that the bottle would reach the plaintiff, or a similarly situated individual, in Idaho.[112] The bottle maker was a large manufacture of bottles, but similar to DSC, it did not design its bottles for the Idaho market, advertise in Idaho, establish channels for providing regular advice to Idaho customers, employ distributors as sales agents in Idaho, operate an office in Idaho, own or lease property in Idaho, or send employees to Idaho for any reason. These are all examples of additional conduct — or the "plus" — that the court in *Asahi* required to meet the stricter version of the stream of commerce test. The plaintiff also produced expert reports opining that the bottle was defective.

¶53 The Idaho Supreme Court held personal jurisdiction existed in Idaho because the out-of-state manufacturer placed its product into the stream of commerce with the expectation it would be sold in the United States, including Idaho. This is similar to instant case where DSC also expected its cans to be sold in the U.S., including U.S. Territories and other jurisdictions where Conagra sold its product. In *Griffin*, an Italian wine company purchased the bottle from the manufacturer, filled it with wine, and exported it to the United States.[113] The bottle of wine was ultimately purchased by the plaintiff in a grocery store in Idaho. After analyzing *World-Wide Volkswagen* and the plurality opinions in *Asahi* and *J. McIntyre*, the Idaho Supreme Court in *Griffin* found *World-Wide Volkswagen* to be the controlling precedent and held that Idaho courts had specific personal jurisdiction over the foreign bottle maker. In adhering to the narrowest opinions from *Asahi* and *McIntyre*, the Court held that the correct test when determining personal jurisdictional issues remains the "stream of commerce" test adopted by the United States Supreme

---

plurality opinions in *Asahi*, Justice O'Connor's and Justice Brennan's, produced two distinct frameworks for the minimum contacts analysis as it relates to stream-of-commerce theory, and we have not had occasion to choose between the O'Connor and Brennan positions." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, n. 15 (3d Cir. 2009).

[111] *Griffin v. Ste. Michelle Wine Estates Ltd.*, 169 Idaho 57, 491 P.3d 619 (2021).

[112] *Id.*

[113] Similar to instant case, the out-of-state defendant bottle maker sold many of its manufactured bottles to an Italian third-party wine company also outside Idaho – who then filled the bottles and distributed them throughout the U.S. From 2008 to 2018, the third-party company purchased over 92 million bottles from the defendant. During the same time period, over 43 million bottles of wine were exported by the third-party company to the United States. Beginning in 2013, Ste. Michelle, acting as an exporter, shipped 1,308 bottles of its Villa Antinori Chianti Clasico Riserva to various Idaho distributors, in bottles manufactured by the defendant and filled by the third-party company. One of those distributors sold 138 bottles of Villa Antinori Chianti Classico Riserva to Idaho customers and consumers between 2013 and 2018. One of those customers was Albertsons grocery store where the Plaintiff purchased the bottle of wine that caused her injuries. The third-party company confirmed that the bottle that caused Plaintiff's injuries was manufactured by the defendant and purchased at Albertsons in Idaho. *Id.* at 60.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
**Case No. ST-2020-CV-00170**
**Memorandum Opinion and Order**
**Page 21 of 25**

Court in *World-Wide Volkswagen.* Although the manufacturer argued it had no contacts with Idaho supporting jurisdiction, traditional notions of fair play and substantial justice were not offended because the manufacturer was found to have purposefully availed itself of conducting activity in Idaho through the stream-of-commerce doctrine.[114]

¶54 DSC's forum contacts most resemble those in *Asahi*.[115] The plurality in *Asahi* applied the stricter "stream of commerce plus" test, however, the "stream of commerce" standard originating in *World-Wide Volkswagen* and interpreted by Justice Brennan is satisfied here. DSC's contacts with the U.S. Virgin Islands are part of a formal and informal distribution network used to "serve directly or indirectly, the market for its product in other States."[116] It is true that DSC did not design its cans for the U.S. Virgin Islands market, advertise in the U.S. Virgin Islands, establish channels for providing regular advice to consumers in the U.S. Virgin Islands, employ distributors as sales agents in the U.S. Virgin Islands, operate an office in U.S. Virgin Islands, own or lease real or personal property in the U.S. Virgin Islands, or send employees to the U.S. Virgin Islands for any reason. However, these are examples of additional conduct — or the "plus" — that Justice O'Connor required in *Asahi* to meet her stricter version of the stream of commerce test. Like the defendants in both *Asahi* and *Griffin*, the record shows that DSC did place millions of its aerosol cans throughout the United States by selling them to a company it reasonably knew distributed those cans throughout the United States — including in the U.S. Virgin Islands — through a network of distributors and retailers.

¶55 DSC relies on *Walden* v. *Fiore* for the proposition that forum-related activity of a third party giving rise to a plaintiff's claims is insufficient to establish personal jurisdiction.[117] DSC also relies on *Shuker's* citation to *Bristol-Meyers Squibb Co.'s* holding that "[t]he bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State." [118]

---

[114] *Griffin v. Ste. Michelle Wine Estates Ltd.*, 169 Idaho 57, 82, 491 P.3d 619, 644 (2021).

[115] *Asahi* was a product liability action arising out of a motorcycle accident. The rider of the motorcycle asserted that he was injured and that his passenger was killed because the motorcycle's rear tire exploded. The rider brought suit in California state court against both the Taiwanese manufacturer of the tire tube and the Japanese manufacturer of the tube's valve assembly. The Taiwanese manufacturer filed a crossclaim seeking indemnification from the Japanese manufacturer. The injured rider eventually settled his own claims, leaving only the crossclaim by the Taiwanese manufacturer against the Japanese manufacturer, and the Japanese manufacturer moved to dismiss on the basis of a lack of personal jurisdiction. *Asahi*, 480 U.S. 102 (1987).

[116] *World-Wide Volkswagen*, 444 U.S. at 297.

[117] *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (noting the Court has "consistently reject[ed] attempts to satisfy the defendant-focused minimum contacts [test] by demonstrating contacts between...third parties...and the forum state").

[118] *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *Bristol-Myers*, 582 U.S. at 267).

*Shanika K. Lewis v. Conagra Brands, Inc.*
Case No. ST-2020-CV-00150
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*                    2023 VI Super 30
Case No. ST-2020-CV-00170
**Memorandum Opinion and Order**
**Page 22 of 25**

¶56 In fact, *Bristol-Myers* [119] and *Walden* [120] reinforce all that this Court has said about why U.S. Virgin Islands courts have jurisdiction in this case. In *Bristol-Myers*, the Court found jurisdiction improper because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims. [121] That is not true here, where the plaintiff is a resident of the U.S. Virgin Islands and purchased the allegedly defective can in the U.S. Virgin Islands, used the allegedly defective can in the U.S. Virgin Islands, and suffered injuries when the can allegedly malfunctioned in the U.S. Virgin Islands. Looking to *Walden*, the defendant never formed any contact with the forum State, unlike DSC, who formed connections to the U.S. Virgin Islands by entering its allegedly defective can into the stream of commerce. [122] The admonition in *Walden* is that it is "the *defendant's* conduct," not the plaintiff's injury, "that must form the necessary connection with the forum State." [123]

¶57 By virtue of DSC's mass production and Conagra's distribution network throughout the United States, DSC cannot reasonably assert that it was "surprised" to be hauled into any state — or territorial — court in the United States. Neither can it credibly maintain it was unforeseeable that its cans would be purchased in the U.S. Virgin Islands and end up in a kitchen cabinet here. DSC cites to *Burger King* stating a defendant "will not be haled into a jurisdiction solely as a result

---

[119] In *Bristol-Myers Squibb*, 593 out-of-state plaintiffs who brought suit in California state court, together with 86 California residents, asserted products liability and related claims based on injuries allegedly caused by their use of the drug Plavix. The product was manufactured and distributed by the drug manufacturer defendant, incorporated in Delaware and headquartered in New York. The Supreme Court found there to be no personal jurisdiction over the nonresident plaintiffs, and personal jurisdiction was not challenged against the California plaintiffs. "The nonresident plaintiffs had not obtained Plavix in California, from California physicians or any other California source, nor did they allege that they had been injured by using Plavix in California or that they were treated for their injuries in California. Although the defendant distributed Plavix in California and engaged in research, unrelated to Plavix, in California, those contacts that were unrelated to the nonresident plaintiffs' claims were not sufficient to establish specific personal jurisdiction. "What is needed — and what is missing here — is a connection between the forum and the specific claims at issue." *Tutein v. Fiat Chrysler Automobiles, US LLC*, 73 V.I. 306, 316, 2020 VI SUPER 71 (quoting *Bristol Myers Squibb*, 582 U.S. at 265).

[120] In *Walden*, Nevada plaintiffs sued an out-of-state defendant — a Georgia police officer working as a deputized DEA agent — for conducting an allegedly unlawful search of the plaintiffs while they were in Georgia preparing to board a plane bound for Nevada. The Supreme Court recognized that although a nonresident's physical presence is not required to create jurisdiction, the nonresident must have certain minimum contacts based on the relationship among the defendant, the forum, and the litigation. Further, the defendant must create the contact, and the analysis for minimum contacts focuses on the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." The Supreme Court held that the Nevada courts lacked specific jurisdiction even though the plaintiffs were Nevada residents and "suffered foreseeable harm in Nevada" because the "*relevant* conduct occurred entirely in Georgia, and the fact that the defendant's conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 289, 291 (2013) (emphasis added).

[121] *Bristol-Meyers* 582 U. S. at 265.

[122] *See, e.g., Hills v. Whitecap Investment Corp. d/b/a Paradise Lumber*, 2014 V.I. LEXIS 114, *8-9 (Super Ct. 2014) (holding that *Walden* did not affect the stream of commerce strand of personal jurisdiction analysis in denying defendant's Motion to Dismiss for lack of personal jurisdiction).

[123] *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 577 (2020) (citing *Walden* 571 U.S. at 290) (emphasis added).

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
Case No. ST-2020-CV-00170
Memorandum Opinion and Order
Page 23 of 25

of 'random,' 'fortuitous,' or 'attenuated' contacts. . . or of the 'unilateral activity of another party or third person,'" but DSC's contacts with the U.S. Virgin Islands are clearly not random, fortuitous, or attenuated as DSC asserts. [124] The wide and massive distribution network that its product travels through removes DSC from the realm of isolated or single contacts and satisfies *World-Wide Volkswagen's* definition of placing a product into the stream of commerce.

¶58 DSC contends that Lewis did not produce evidence of revenue derived by DSC, "let alone substantial revenue, from goods used or consumed in the Virgin Islands," however, DSC clearly enjoys the monetary benefits of the sales and distribution of its cans throughout the United States, including in the U.S. Virgin Islands. This is what Justice Brennan referred to as the "regular and anticipated flow of products from manufacture to distribution to retail to sale."[125] While the U.S. Virgin Islands may be a relatively small market, it should not be surprising to DSC that many of the cans it placed into the stream of commerce were eventually carried here and sold by such market currents.

### 3. Personal jurisdiction over DSC comports with notions of fair play and substantial justice.

¶59 The final prong of the due process analysis pursuant to *International Shoe* considers the fairness of a court exercising jurisdiction over the out-of-state defendant. [126] Once it is established that a defendant has the requisite minimum contacts, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.[127] These fairness factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and/or the shared interest of the several states in furthering fundamental substantive social policies.[128]

¶60 As to this final prong, "the burden of proof shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[129] DSC has made no claim of burden or prejudice by this Court and this Court will not speculate on potential prejudice to DSC where none has been articulated and none is apparent. To date, DSC's defense in this matter has been competently presented through U.S. Virgin Islands counsel.

---

[124] *Burger King Corp.* 471 U.S. at 475 (1985) (citations omitted.)

[125] *Asahi*, 480 U.S. at 117 (Brennan, J. concurring).

[126] *See Int'l Shoe*, 326 U.S. at 316 ("maintenance of the suit [should] not offend 'traditional notions of fair play and substantial justice.'") (citation omitted); *see also Molloy v. Independence Blue Cross*, 56 V.I. 155, 164 (V.I. 2012).

[127] *Id.* at 320.

[128] *World-Wide Volkswagen*, 444 U.S. at 292; *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

[129] *Burger King Corp.* 471 U.S. at 477 (1985).

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*          2023 VI Super 30
Case No. ST-2020-CV-00170
Memorandum Opinion and Order
Page 24 of 25

¶61 The "primary concern" in assessing personal jurisdiction is "the burden on the defendant."[130] Obviously, a court must consider the practical problems resulting from litigating in the forum, but it also must consider "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question."[131] The law of specific jurisdiction seeks to ensure that States with "little legitimate interest" in a suit do not encroach on States more affected by the controversy. [132] The U.S. Virgin Islands has significant interests at stake in providing its residents with a convenient and effective forum for redressing injuries inflicted by out-of-state actors as well as enforcing its own safety regulations.[133] Consider, next to those, the interests of the State of first sale, Illinois, where the suit involves an out-of-state incident and out-of-state injury. The suit's only connections with Illinois is that it is where DSC manufactures its aerosol cans, and it is principal place of business for both DSC and Conagra. In other words, there is a less significant "relationship among the defendant, the forum, and the litigation."[134] Clearly, Lewis' interests are best served, and she can most conveniently and effectively seek relief in U.S. Virgin Islands courts. Lewis resides here. Witnesses are located here. Moreover, the U.S. Virgin Islands has a clear interest in protecting its residents from defective products. Without counterargument from DSC, the interest of the U.S. Virgin Islands is apparent to permit a U.S. Virgin Islands claimant to seek redress for personal injury claims arising from an accident that occurred in the U.S. Virgin Islands.

¶62 This court concludes that the assertion of personal jurisdiction over DSC is reasonable such that it would not violate "traditional notions of fair play and substantial justice." [135] Moreover, the assertion of personal jurisdiction comports with due process under the Fourteenth Amendment.

## IV.    CONCLUSION.

¶63 Defendant DS Containers, Inc. moves to dismiss Plaintiff Shanika K. Lewis' complaint for lack of jurisdiction because it claimed not to have the required minimum contacts with the forum for the exercise of personal jurisdiction in the U.S. Virgin Islands. DSC also moved to stay proceedings.

¶64 Lewis has established with reasonable particularity sufficient contacts between DSC and the forum by a prima facie showing, which taken as true, and construing all factual disputes in her favor as the opposing party, establishes that jurisdiction over DSC in the U.S. Virgin Islands

---

[130] *World-Wide Volkswagen*, 444 U. S. at 292.

[131] *Id.* at 294.

[132] *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers*, 582 U.S. at 256.)

[133] *Gov't of United States Virgin Islands v. Takata Corp.*, 67 V.I. 316, 363 (V.I. Super. 2017); *Burger King*, 471 U. S. at 473; *see also Keeton*, 465 U.S. at 776.

[134] *Walden*, 571 U.S. at 284 (internal quotation marks omitted.).

[135] *Int'l Shoe*, 326 U.S. at 316.

*Shanika K. Lewis v. Conagra Brands, Inc.*
*Case No. ST-2020-CV-00150*
*Shanika K. Lewis v. DS Containers, Inc., and PSMT, LLC d/b/a Pricesmart*
*Case No. ST-2020-CV-00170*
**Memorandum Opinion and Order**
**Page 25 of 25**

2023 VI Super 30

is proper and in accordance with both the U.S. Virgin Islands Long-Arm Statute and the United States Constitution. As contemplated by the Long-Arm Statute, DSC engaged in a persistent course of conduct and derives substantial revenue from goods used or consumed in the U.S. Virgin Islands. Furthermore, the sale of DSC's cans in the U.S. Virgin Islands is not simply an isolated occurrence, but arises from the efforts of DSC to serve, indirectly, the U.S. Virgin Islands market for its product by its placement in the stream of commerce as described in *World-Wide Volkswagen.* DSC indirectly benefits from sales in the U.S. Virgin Islands. It is not unreasonable to subject DSC to suit here. Additionally, as neither the U.S. Virgin Islands Supreme Court nor the U.S. Virgin Islands Superior Court previously adopted a stream-of-commerce standard, this Court conducted a *Banks* analysis and adopted the stream-of-commerce standard as set forth in *World-Wide Volkswagen* as a part of the U.S. Virgin Islands common law, consistent with the elements and parameters contained herein.

¶65 Accordingly, it is

**ORDERED** that DS Containers, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed on June 4, 2020, is **DENIED;** and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: June __16__, 2023

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor __6 / 20 / 2023__